```
1                     UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF KENTUCKY
2                    NORTHERN DIVISION AT COVINGTON
                              - - -
3    MARIA MCLEAN,              .   Case No.  2:19-CV-172
                                .
4             Plaintiff,        .
                                .   Tuesday, April 20, 2021
5         - v -                 .   2:30 p.m.
                                .
6    THOMAS MORE UNIVERSITY,    .   VIA ELECTRONIC RECORDING
                                .
7             Defendant.        .
                              - - -
8
          TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE PROCEEDINGS
9           BEFORE THE HONORABLE CANDACE J. SMITH
               UNITED STATES MAGISTRATE COURT JUDGE
10                            - - -

11   For the Plaintiff:         Pro Se

12   For the Defendant:         Kelleene Ann Holden, Esq.
                                Dressman Benzinger LaVelle, P.S.C.
13                              221 East Fourth Street, Suite 2500
                                Cincinnati, Ohio  45202
14                                 and
                                Nicholas Charles Birkenhauer, Esq.
15                              Dressman Benzinger LaVelle, P.S.C.
                                207 Thomas More Parkway
16                              Crestview Hills, Kentucky  41017

17   Transcriber:               Linda S. Mullen, RDR, CRR
                                Official Court Reporter
18                              101 Barr Street
                                Lexington, Kentucky  40507
19

20   Proceedings recorded electronically, transcript produced by
     computer.
21

22

23

24

25
```

1    (Proceedings held April 20, 2021, 2:30 p.m. by electronic court

2    recording.)

3         THE COURT:  Good afternoon, everyone.  This is Judge

4    Smith.  We are on the audio record in Covington Civil 19-172.

5    This is the case of Maria McLean versus Thomas More University.

6         Let's have entry of appearances for purposes of our

7    record, please.

8         Madam Clerk tells me, Ms. McLean, you are on the phone,

9    ma'am?

10        MS. McLEAN:  Yes, I am, Your Honor.

11        THE COURT:  Thank you.

12        MS. McLEAN:  Good afternoon.

13        THE COURT:  Good afternoon.  Thank you.

14   And since we do have an audio record, if you would just

15   keep your voice up for me so I can make sure that we get an

16   adequate record.

17        And then let's see here.  Who do we have on today's call

18   on behalf of Thomas More, please?

19        MS. HOLDEN:  Your Honor, this is Kelly Holden, I'm on the

20   call, and Nick Birkenhauer is on the call as well.

21        THE COURT:  All right.  Thank you.

22        Okay.  All right.  So it looks like we have everyone that

23   we need for purposes of our call today.  I was not expecting

24   Mr. Imm or Mr. Finney to be joining in the call, although they

25   will be -- they will be the topic of at least one conversation

1   that we should have.

2       There are a couple of things that I would like to cover in

3   today's call.  I think the first thing I want to just note for

4   the participants here today is that I am conducting this in the

5   courtroom.  So I did decide to go ahead and have this on the

6   record.

7       As Ms. Holden and Mr. Birkenhauer, and you may know as

8   well, Ms. McLean, but just out of an abundance of caution, let

9   me just explain that when the Court conducts an informal

10  telephone conference, those telephone conferences are conducted

11  in chambers, in my offices, and there is not an actual

12  recording of that conference.

13      The attorneys that practice in this court are used to that

14  process.  They understand the procedural mechanisms that go

15  into an informal discovery conference.  And as you have now

16  seen, I have the attorneys submit information to my chambers

17  and then we have an informal call, meaning that it is not on

18  the record.

19      The primary purpose for that informal call is because the

20  Court is not making any formal rulings on any pending motions

21  or anything of that nature.  Informal calls are intended to

22  help the attorneys work through any impasses that they have

23  reached with respect to discovery matters by basically talking

24  it through with the Court.  And hopefully, not always, but the

25  goal for me anyway is to try to give the attorneys some

1    guidance on how I am seeing an issue so that they can hopefully

2    resolve it between them voluntarily without the need to file a

3    formal discovery motion.

4        They also have to go through that step two process, that

5    informal call, with my chambers and with me before they are

6    permitted to file a discovery motion.  So that's what I

7    originally had scheduled for today.

8        However, at the time that my law clerk set up that

9    informal conference with the lawyers in the case, subsequent to

10   that, shortly after that, I think when the letters were due to

11   chambers, it was right around that time, that I became aware

12   from my law clerk that there had been a change in --

13   potentially a change in representation, and that Mr. Imm and

14   Mr. Finney would no longer be representing you, Ms. McLean.

15       So -- excuse me.  So that's kind of the backdrop of our

16   call here today.  Because I do need to take up some procedural

17   matters with you and with defense counsel, I thought it would

18   be best to go ahead and have our call on the record just so

19   everybody is clear as to what's going to happen next.

20       So with respect to your representation status then,

21   Ms. McLean, just before coming out to the bench here, earlier

22   today, not sure what time, but at some point earlier today

23   Mr. Imm and Mr. Finney filed a motion seeking leave to withdraw

24   from representing you further in this case.  And that is docket

25   entry number -- let me find it here real quick, it looks like

1    it's 48 is their motion.

2         Now, that motion was filed.  I understand what you

3    indicated in your email to my chambers.  But even when a party

4    has ended representation by an attorney, attorneys are actually

5    also considered what are called officers of the court, and so

6    under our court rules, they still have certain obligations.

7    Even when you end that representation, they still have to file

8    a request with the court so there is something of record

9    informing the court that they are seeking leave to withdraw

10   from representation in a case.  So that's what Mr. Finney has

11   done and Mr. Imm have done.  And I have had a chance to take a

12   look at that motion.

13        Now, Ms. McLean, is it still your intention to terminate,

14   then, Mr. Finney and Mr. Imm's representation of you in this

15   action?

16        MS. McLEAN:  Should I look at whatever motion they have

17   made prior to answering you?

18        THE COURT:  Well, you most certainly can if you would like

19   to do so.  It is actually very short.  And so just for purposes

20   of proceeding here today, let me read it to you.  And then if

21   you have any questions or you're not comfortable responding to

22   the Court's question without something further, you can let me

23   know.

24        But the motion itself is one page.  And it simply

25   indicates that -- it is titled as a Motion of Christopher P.

1    Finney and Stephen E. Imm to Withdraw as Counsel.  The motion

2    indicates that "Attorneys Stephen Imm and Christopher Finney

3    hereby move the Court for leave to withdraw as counsel of

4    record for the above-named plaintiff, Maria S. McLean, Ph.D.

5         "The undersigned request leave to withdraw as counsel

6    pursuant to rules of the Supreme Court of Kentucky

7    3.130(1.16)(a)(3) and 3.130(1.16)(b)(1).  Dr. McLean has

8    terminated counsel's representation, and she has indicated that

9    she is retaining new representation.

10        "Withdrawal can be accomplished without any material

11   adverse effect on defendant Thomas More University, as the

12   discovery and dispositive motion dates for this case are in the

13   process of being revised.

14        "Wherefore, the undersigned counsel move for leave to

15   withdraw as counsel of record.  A proposed order granting the

16   relief requested is being tendered simultaneously with this

17   motion."

18        And then it is signed by Mr. Imm and has Mr. Finney and

19   Mr. Imm's name on it.  I do see that there is a certificate of

20   service, Ms. McLean.  And the certificate of service, in

21   addition to defense counsel receiving this motion by electronic

22   service, it does indicate that this motion, or a copy of it,

23   was emailed to you at, looks like -- this I'm assuming is your

24   email address, Mcleanmaria042@gmail.com.

25        Is that your email address?

1        MS. McLEAN:  No, not quite.

2        THE COURT:  Okay.  So you did not -- you did not receive

3    the email of this motion, correct?

4        MS. McLEAN:  I believe that's correct.  I'm quickly

5    double-checking here.

6        THE COURT:  Okay.

7        MS. McLEAN:  But --

8        THE COURT:  So as you are checking, this motion that has

9    been filed by these two gentlemen, this is consistent with what

10   I mentioned just a moment ago, that even when a party, when a

11   client has termed or ended the legal representation, the

12   attorney-client relationship with counsel, there is still the

13   obligation to notify the Court and to seek leave from the Court

14   to actually withdraw from a case.

15       There are -- that's for both civil and criminal cases,

16   because there can be a variety of circumstances where the Court

17   may have further inquiry as to why someone needs to withdraw,

18   if it's coming up on a trial date in a criminal case, for

19   example.  There's just a host of circumstances.

20       But as I read to you here, this motion that was filed by

21   the two of them simply indicates that they seek leave to

22   withdraw because their representation of you has been

23   terminated by the client.  In other words, by you.  And on that

24   basis, they are asking to withdraw from the case.

25       Do you have any questions about that?

1      MS. McLEAN:  Only one.  And thank you very much for

2  reading that and taking the time to read that.  And I just

3  signed into my gmail.  And I was wrong.  They did have the

4  correct address, it arrived perhaps 45 minutes ago.

5      THE COURT:  Okay.

6      MS. McLEAN:  And I have not -- I was working on responses

7  for this meeting and I have not checked that gmail.

8      THE COURT:  Okay.

9      MS. McLEAN:  But they have sent it to me.

10     And the only concern or issue that I might have is their

11  statement that I indicated to them that I have other

12  representation.  And I believe what I indicated to them was

13  that I had conferred with other attorneys who would --

14     THE COURT:  Right.

15     MS. McLEAN:  -- represent me differently.

16     THE COURT:  Right.  And I think if I'm not mistaken, my

17  memory is, I think, perhaps in one of the emails over the last

18  few days, there was a mention of that as well.

19     I would note for you simply that -- let's see here.  I

20  think the statement they actually made was that "she," meaning

21  you, "she has indicated that she is retaining new

22  representation."  They have not -- they don't use the word "has

23  retained new representation."

24     Do you see what I mean?

25     MS. McLEAN:  I do.

9

1          THE COURT:  Okay.  So unless there is some specific
2     objection that you need to point me to, ordinarily or in the
3     ordinary course, I would be inclined to go ahead and grant
4     their motion so that they are formally terminated from the
5     docket and from receiving notices and so forth as your counsel
6     of record in the case.
7          Is there any objection to my granting that motion,
8     Ms. McLean?
9          MS. McLEAN:  No, Your Honor.  None at all.
10         THE COURT:  Okay.
11         And how about the defendants, Ms. Holden, Mr. Birkenhauer,
12    do you have any objection to the Court granting that motion?
13         MS. HOLDEN:  No, Your Honor.
14         THE COURT:  All right.
15         So, Madam Clerk, docket entry number 48, Motion of
16    Christopher Finney and Stephen Imm to Withdraw as Counsel, is
17    granted by the Court.  And following the service, the email
18    service of the minutes from today's call, Mr. Finney and
19    Mr. Imm can be terminated on the docket sheet as counsel of
20    record for Ms. McLean and their names removed from the case
21    electronic service list.  Okay.
22         So with their withdrawal in the case which I have just
23    granted, that leads to the next question or topic that the
24    Court wanted to speak with the parties about during today's
25    call.

1    So as far as the current circumstances of the case, it
2    does appear that at this point, Ms. McLean, you are not
3    represented by counsel.  And in civil cases like this, parties
4    do have essentially two choices if they intend to pursue their
5    case.  They can either, of course, hire counsel and be
6    represented by counsel in a case.  Or in civil cases, parties
7    have a right to represent themselves.  And you've probably
8    heard that phrase, pro se representation, representing oneself.
9    And so it is the party's choice as to how they wish to proceed.
10   At least when it is an individual, they have that choice.

11   And so I do note these references to you having at least
12   consulted with and/or are currently speaking with perhaps some
13   potential attorneys to represent you in this matter.

14   Now, this is -- as I'm sure you are aware, this is a
15   fairly complicated or complex civil case in the sense that it
16   does involve employment claims, employment law claims.  And
17   there are multiple claims that have been asserted.

18   So it is not -- not what we lawyers would think of as a
19   more garden-variety type of case, such as an auto accident or
20   something like that, a general negligence case, I'll put it
21   that way.  So it is fairly sophisticated.

22   Is it still your intention to either potentially or you're
23   currently discussing hiring new counsel to represent you in
24   this matter, Ms. McLean?

25   MS. McLEAN:  I am certainly discussing it with a new

1    counsel.  And, in fact, I have in my email unsolicited emails

2    from two potential representatives.

3        THE COURT:  Okay.  Okay.  So normally what I would do,

4    ordinarily what I would do in a case like this, a civil case

5    where there has been an indication to the Court that there is

6    likely to be a change in counsel, current counsel withdrawing

7    and potential new counsel stepping in for representation in the

8    case, what I typically do is allow the party who is seeking

9    representation a reasonable time to make those inquiries and to

10   make a final determination of whether they are going to be, of

11   course, officially or formally hiring new counsel, and having

12   that counsel file what is known as an entry of appearance in

13   the case to officially notify the Court as well as opposing

14   counsel that they are now counsel of record in the case on your

15   behalf.

16       So what -- or how much time do you feel like you would

17   need in order to accomplish that?  To speak or interview these

18   various individuals and make a determination of whether you'll

19   be hiring new counsel.

20       MS. McLEAN:  I am not sure, Your Honor.  I have actually

21   spoken to an attorney who is not local and who informed me that

22   I would also need a local counsel.  And if she were -- I think

23   in order for her to appear, what, pro hac vice --

24       THE COURT:  Uh-huh.  Uh-huh.  She's -- he or she is not

25   currently admitted to our court, but -- on a general basis, but

```
 1    they can apply to be admitted before this court specifically

 2    for purposes of this case.  So they would file a motion to do

 3    that.  That is correct.

 4        Now -- well, I'll let you, of course, have your

 5    communications with that potential attorney.  But usually -- I

 6    can tell you that the average time frame that I tend to grant

 7    to allow -- because we want to keep the case moving, of course,

 8    it has -- for everyone's sake, the Court as well as the parties

 9    involved in the case.  So we do want to keep it moving as much

10    as reasonably possible.

11        So on average, I will generally grant a 30 to -- probably

12    the furthest I would go is 45 days, in terms of committing

13    someone to make a final decision on whether they are going to

14    have new counsel on their behalf.

15        Would a 30-day time frame work for you, Ms. McLean?

16        MS. McLEAN:  May I ask a question before I answer that?

17        THE COURT:  Yes.

18        MS. McLEAN:  Is this setting aside my request for the

19    proposed agreed order revising the case schedule so that I can

20    begin a drug treatment regimen?

21        THE COURT:  Well, so we'll digress for just a moment and

22    let me explain to you how the Court's seeing it anyway in terms

23    of the current schedule.  And we'll see if this answers your

24    question.

25        I had a telephone conference with counsel, and you were on
```

1   that call as well, back in mid-March of this year.  And at that

2   time there was a discussion about the case schedule that was

3   then applicable to the case, that is -- docket entry number 21

4   is the scheduling order that was originally entered for this

5   case by the district judge.

6       Now, during that March 17th phone conference then, and as

7   reflected in the minutes from that phone conference, based upon

8   the concerns that were expressed about the schedule in the case

9   by both sides, I vacated -- so I vacated in the record certain

10  deadlines that were set by that scheduling order.  The fact

11  discovery deadline.  The deadlines for expert -- what we call

12  expert witness disclosures.  Then expert discovery.  And the

13  filing of what are called dispositive motions or *Daubert*

14  motions -- and/or *Daubert* motions.

15      So I vacated all of those deadlines as they were set in

16  that scheduling order and indicated in my minutes that those

17  deadlines were just what we call continued generally.

18  "Continued generally" meaning that the Court at a future time

19  will set new deadlines for those categories.

20      And so that's why I instructed the attorneys to talk

21  further between themselves and without the Court's involvement

22  and file a proposed order, at least a proposal identifying for

23  the Court how much time they believed was necessary as far as

24  extending these deadlines.  So that was filed by the attorneys

25  back when Mr. Imm was still representing you.  And I believe

1  that is -- docket entry number 45 is that proposed agreed

2  order.

3      Now, that is still currently, of course, in the record.

4  It is listed as pending.  The Court has not signed off on that

5  proposed agreed order.  And one of the reasons why I have not

6  signed off on that proposed agreed order is because it was

7  filed on April 6th, and my intention -- originally, my

8  intention was to speak with the lawyers about their proposed

9  deadlines when we had our upcoming informal telephone

10 conference that was -- how today was originally set, to be an

11 informal conference.  So I had intended on speaking with them

12 about the proposal.

13     Now, that was prior to any notification to the Court that

14 you were going to be terminating Mr. Finney and Mr. Imm's

15 representation, and that you would likely be seeking new

16 representation.

17     So generally speaking, the Court does not typically sign

18 off or agree to a schedule that has been proposed by the

19 parties when we are smack in the middle of a switchover in

20 counsel in the case.  And my thought on that being that it is

21 important for new counsel to come aboard.  And then typically

22 what I do is I will hold either a further telephone conference,

23 or sometimes I'll have the parties come in in person to conduct

24 a status conference once I know who the new lawyer is, and I

25 can assure myself that they are up to speed on the case, that

1    they have the materials they need to have and are ready to go,

2    so to speak.

3        And at that point, then, we can have an intelligent

4    conversation, an informed conversation about what deadlines

5    realistically need to be set for the case, or proposed by the

6    parties in light of the change of circumstances of having a new

7    attorney step into the mix.

8        So that is typically how I handle it.  And that is also

9    why docket entry number 45, the proposed agreed order, has not

10   yet anyway been signed off on by the Court.

11       So officially, the record officially at this point, as far

12   as a case schedule, the only official case schedule is that

13   minute entry that was filed on March the 17th that continued

14   generally the deadlines for those categories that I just

15   mentioned, so those have not yet been reset.

16       And it really would not be my intention to reset those

17   deadlines until I know more about whether there's going to be a

18   new lawyer involved in the case on your behalf or you are going

19   to be moving forward representing yourself in the litigation.

20       So that conference would need to come down the road just a

21   short ways.  But whatever time I give you to have a new lawyer

22   enter an appearance in the case, let's say it's 30 days, what I

23   would anticipate then is having a conference with the attorneys

24   shortly thereafter, once I know who the new counsel is.  And at

25   that time then we would discuss what new deadlines need to be

1    set for the case.

2         Does that help to explain both the current status of the

3    record, Ms. McLean, and what the Court's intentions are moving

4    forward?

5         MS. McLEAN:  Yes, Your Honor, it does.  It does incline me

6    to identify myself as a pro se litigant.  So for at least the

7    time being, because -- because of the issues related to my

8    meeting the re-established or revised case schedule.

9         But are you saying that if I were a pro se litigant, you

10   would not be willing to discuss with me and opposing counsel

11   those deadlines?

12        THE COURT:  No, ma'am.  If you are going to -- if you are

13   going to represent yourself, and you know today that you are

14   going to represent yourself, that you are not going to have a

15   new attorney step into the case, then there would be a

16   discussion about case deadlines.

17        However, both based on the motion of your prior counsel

18   and I think what was referenced in one of the emails, it is my

19   understanding -- and, actually, you have indicated this on the

20   phone today as well -- it is my understanding that you are

21   discussing potential representation with counsel.

22        In light of the complexity of the case, frankly, it would

23   be in your best interest.  You do not have to ultimately, but

24   it would be in your best interest to be represented by counsel

25   just simply in order to have someone who is licensed and

1   understands the process and the system at the very minimum.

2   But that is your decision to make.  And I would certainly

3   encourage you to at least consider that.

4       That is typically why I set that 30 day.  You don't have

5   to have the full 30 days.  If you decide next week that you

6   have agreed upon a representation arrangement with someone,

7   they would file an entry of appearance and then the Court will

8   make a further scheduling to discuss where the case goes next

9   then procedurally.

10      And attorneys are very used to those type of

11  conversations.  If you are speaking with counsel right now, and

12  I'm not sure if this is your question or not, but if you are

13  speaking with counsel, potential counsel right now, and the

14  concern that you have is that there is not a case schedule

15  that -- for some of the deadlines that is currently in place,

16  the most important thing for you to communicate to them is that

17  March minute entry where the Court continued or extended

18  generally those deadlines over discovery and experts and so

19  forth until there is a further order from the Court setting

20  specific dates for that.  So those are continued generally

21  right now.

22      MS. McLEAN:  Thank you.  And I appreciate your advice

23  about the complexity of the case and the value of having

24  counsel.  I do know this is going into a record, but my primary

25  concern is that I have approximately $30,000 worth of drugs in

1    my refrigerator that have expiration dates, and that I need to

2    begin that drug treatment.

3        THE COURT:  Uh-huh.  Uh-huh.  Well, a couple of things --

4    a couple of things, Ms. McLean.

5        One -- and you're not going to know this or realize this,

6    but just for purposes of the record, I do want to clarify and I

7    need to correct you just a little bit.

8        You had mentioned about you appreciated the Court's advice

9    about the complexity of the matter.  So the Court is not

10   permitted to give advice to either side in the case.  I'm not

11   advising you that you must or have to do something.  I am

12   encouraging you to think about the level of legal complexity of

13   the proceedings.  And, frankly, I would do that in any case of

14   this nature where someone was considering representing

15   themselves.  And it is, in part, for the reason I just

16   mentioned.

17       The Court, of course, has to be objective to the parties

18   that appear before it.  It cannot take one side or the other,

19   and so it's not permitted to give advice to either side.  And

20   that's one of the reasons why it's good for parties to be

21   represented by lawyers, because sometimes pro se litigants

22   don't always understand that they can represent themselves by

23   law, but they are still held to the same standard, in terms of

24   knowing the rules of court and being ready and prepared to

25   proceed and abiding by all of the same obligations that a

1   lawyer would on their behalf.

2        So that can be a little bit daunting for some folks, to

3   say the least.  So I do -- you know, I do appreciate that.

4        Now, with respect to your medical circumstances.  Of

5   course, I do not know the specifics of that.  And you know, the

6   Court's -- the Court's goal here, I guess, is I want to keep

7   the case moving forward, but I also want to give you an

8   opportunity, a sufficient opportunity to be able to speak with

9   counsel and potentially hire counsel.

10        While you are undergoing your medical course, are you or

11   will you be able to also be consulting with counsel and

12   speaking with counsel?

13        MS. McLEAN:  Well, the individual whom I had spoken with

14   as a potential counsel said clearly to me, "Your involvement is

15   critical."  And my previous experience with an alternate

16   version of the drug regimen is very debilitating.  And that was

17   one of the reasons why I asked for the revised case schedule,

18   because I am concerned about the effects and my inability to

19   play a significant role in the case.

20        THE COURT:  Okay.  I'm sorry, go ahead.

21        MS. McLEAN:  No.  She had simply said that very

22   straightforwardly.  "You need to be able to participate in this

23   case."

24        THE COURT:  Uh-huh.  So for the regimen, Ms. McLean, are

25   we talking, is this -- and I just don't know.  I'm just trying

1   to get an idea of general parameters.  Is this something that

2   is a matter of weeks or of months?  Or do you have any idea

3   if -- and I hope, certainly hope this is not the case, but if

4   you are debilitated to the extent that -- from the treatment

5   that you are not able to be involved to the extent that you

6   want to and your counsel feels like you need to, what kind of

7   time frame are we talking about for you to undergo that

8   regimen?

9        MS. McLEAN:  Yes.  And I may have sent this to your

10  chambers inappropriately, I think you could say, and I

11  apologize for that, prior to the March meeting.  It's a

12  five-month daily treatment.

13       THE COURT:  Okay.  All right.  And so in the course of

14  that five-month daily treatment regimen, if you know, I

15  understand some of this may be dependent on how you do in the

16  course of that treatment, how you respond to that, but if you

17  respond reasonably well, is it the type of situation where you

18  would still be able to engage in at least certain activities,

19  limited activities, such as speaking with counsel and so forth?

20       MS. McLEAN:  Are you ask -- I'm sorry, was that a

21  question?

22       THE COURT:  Yes, uh-huh.

23       MS. McLEAN:  I honestly do not know.

24       THE COURT:  Okay, all right.

25       MS. McLEAN:  I know --

1        THE COURT:  I'm sorry, go ahead.  Uh-huh.

2        MS. McLEAN:  Possible with the similar drug, and I was

3    bedridden.

4        THE COURT:  Okay.

5        MS. McLEAN:  And not very functional.

6        THE COURT:  Okay.

7        MS. McLEAN:  And I did document that with a physician.

8        THE COURT:  I'm sorry.  I didn't catch the tail end of

9    what you just said.

10        MS. McLEAN:  Did document that with one of my healthcare

11    providers.

12        THE COURT:  I'm sorry, I'm having a little bit of trouble

13    hearing you.  You said something about with one of your

14    healthcare providers.

15        MS. McLEAN:  I did document the debilitating side

16    effects --

17        THE COURT:  Oh.

18        MS. McLEAN:  -- with one of my healthcare providers.

19        THE COURT:  Okay.  Okay.  All right.

20        And, ma'am, when are you scheduled to start the five-month

21    daily regimen?

22        MS. McLEAN:  When we put together the revised case

23    schedule, I was intending to start it around the middle of this

24    month.

25        THE COURT:  Okay.  So within the last week or so?

1      MS. McLEAN:  Yes.

2      THE COURT:  Okay.  Now, I've been doing a lot of talking

3 and my comments and questions have been directed mostly to you,

4 Ms. McLean.  So let me hear from Ms. Holden.

5      Ms. Holden, what is the defendant's position with respect

6 to the procedural posture of the case?

7      MS. HOLDEN:  Your Honor, do you mean with regard to the

8 deadlines being continued?

9      THE COURT:  Well, right now, they are continued.  They

10 have been continued --

11      MS. HOLDEN:  Right.

12      THE COURT:  -- generally.  And --

13      MS. HOLDEN:  Right.

14      THE COURT:  So ordinarily I would give -- give the

15 plaintiff a period of time to see about finalizing her

16 representation status.

17      MS. HOLDEN:  Sure.

18      THE COURT:  And then have a further conference to move

19 forward with an appropriate schedule then at that time, once we

20 know if new counsel is going to be stepping in or Ms. McLean is

21 going to be representing herself.

22      And so the treatment regimen that is being discussed here,

23 I take it at this point that Ms. McLean has concerns about her

24 abilities to move forward with retaining counsel while -- or

25 doing that, that interview and consultation process, while she

1   is undergoing treatments.

2       So I would like to hear from both sides.  I just want to

3   make sure that if the defendant has -- or takes a position or

4   has thoughts on the matter that you're given an opportunity to

5   express those as well.

6       MS. HOLDEN:  Right.  Okay.  I appreciate that, Your Honor.

7       I mean, given the circumstances, we're not going to object

8   to allow her, you know, to continue the case in any manner

9   whatsoever, to allow her time to secure representation and/or

10  to receive whatever treatment she needs.

11      You know, a five-month stay of the case while she's

12  receiving that treatment, I think it's reasonable given the

13  circumstances.  And if the Court is willing to allow that, we

14  would not object to that.

15      THE COURT:  So the defendant would not -- would not object

16  or be opposed to actually staying the case and essentially

17  holding it in abeyance.  That's more a statistical matter with

18  the Court, but just holding it in abeyance, placing everything

19  on hold, including any further discovery for that five-month

20  period.

21      Am I understanding correctly, Ms. Holden?

22      MS. HOLDEN:  Right.  That's correct, Your Honor.  You

23  know, the only caveat, and I know we haven't addressed this

24  issue yet, but, you know, the reason for the call today

25  initially was the medical records issue.

1    And certainly when I contacted your chambers to get time,

2  you know, with you today and with all parties involved, it was

3  prior to the issue with her legal counsel.  Because quite

4  honestly, what we were kind of hoping was, while the case would

5  be stayed or pending, it would allow us time to collect those

6  medical records in order for us to have, you know, our medical

7  professionals review those, determine if we need an expert.

8  Because all that takes a significant amount of time.

9    But now that her counsel is no longer involved and she

10 seems to be objecting to the records, you know, that further

11 complicates the issue moving forward even with that today,

12 which I completely understand.  And we can certainly, you know,

13 readdress that issue after -- if there is a stay, you know,

14 after the stay.

15    But what I don't want to do is put my client in a position

16 or put me in a position that's disadvantaged by the stay.

17 Because, you know, we have to resolve the issue if we're even

18 entitled to the records.  And if we are, then actually

19 obtaining them and having time for me to hire a medical expert

20 to review those.  So that's the only issue that gives me any

21 hesitation at all.

22    But assuming, you know, that the stay is granted to allow

23 her to have a medical treatment, we would just need to consider

24 that in regard to the medical record issue in the future so

25 that we're not disadvantaged by, I guess, a stay, if that makes

1   sense.

2        THE COURT:  It does.  It does.

3        And at this point, I do not see any specific -- there

4   would be some potential disadvantages, but I don't see any of

5   those coming into reality necessarily, simply because the Court

6   is aware, from prior informal conferences that I have had with

7   the lawyers, that there has been this ongoing discussion with

8   respect to the medical records and obtaining those or access to

9   those in the discovery phase of the case.

10       So I do know that that issue is still out there.

11  Obviously, that was the main thing that the parties, when this

12  call was initially scheduled, were intending on taking up with

13  the Court when Ms. McLean was represented by counsel at that

14  point.

15       So I don't -- I don't -- I don't see any disadvantage to

16  defendant at this point.

17       MS. HOLDEN:  Sure.

18       THE COURT:  Because the Court is aware of that.  And it

19  would have been nice to be able to tackle that now, but I think

20  frankly it would be a disadvantage to Ms. McLean to try to

21  tackle that now without her having made a final decision with

22  respect to representation and so forth.

23       So here's -- here's what I'm inclined to do.  And I say

24  "here's what I'm inclined to do" because I'm not yet officially

25  ordering it.  I'm going to share with you my thoughts and then

1    see if this will work for both sides as far as moving forward.

2        But, Ms. McLean, you have expressed that the treatments

3    would take approximately five months in starting that.  And

4    it's just going to remain to be seen how you react to that and

5    how you're doing physically in response to that treatment.

6        In the meantime, the Court has expressed that I would --

7    one, I've encouraged you to continue with your discussions with

8    lawyers that you may potentially determine to hire in the case,

9    to represent you further in this case.

10       And I've also expressed that, to the extent that I can, I

11   do like to keep cases moving, just in general.  That depends on

12   the circumstances of every case.  So we do have this medical

13   situation here for you.

14       I'm not opposed -- I think from the Court's standpoint,

15   having heard from both sides today, I'm not opposed to placing

16   a stay on the case, putting the case on hold, holding it in

17   abeyance, so to speak, for -- and the way I would word it

18   probably in an order would be for up to five months.

19       But my hope is that by wording it that way, "for up to

20   five months," I think we can see where things go.  If you -- if

21   you do have, which I hope you do, you do have a good, or at

22   least a decent response to the treatment, that you are able to

23   engage in some other activities without it being too hindering

24   for you or exacerbating things for you, then I would

25   certainly -- the Court would certainly like and encourage

1   Ms. McLean to continue with her interviews and discussions with

2   counsel about potentially hiring new counsel in the case.

3       So what I mean by that, Ms. McLean, is if I were to grant

4   up to five months then, but 45 days from now or 60 days from

5   now an attorney files an entry of appearance and says, "I've

6   been hired by Ms. McLean and I will be representing her further

7   in this case," that's the cue to the Court that the case is

8   ready for me to then lift the stay and set it for a further

9   conference to talk about the case moving forward with the two

10  lawyers -- or lawyers for the two sides at that point.

11      If one month, two months, three months go by and nothing

12  has been filed, no entry of appearance and so forth, that's

13  probably a signal to me that the treatment has been difficult

14  for you.  But without at least some kind of filing, I won't

15  really know that.

16      And I don't want to keep the case on hold for five months

17  if it turns out that you are having a good result to the

18  treatment and you are able to move forward.

19      So what I am inclined to do is grant that stay for up to

20  five months.  If an entry of appearance is filed sometime

21  during that five-month period, then that's great.  As I said,

22  I'll set it for a conference and we'll go ahead and I'll talk

23  with the lawyers about moving forward.

24      If there's no entry of appearance that is filed at

25  least -- at least every, I'll say 60 days, so two months into

1  that five-month process, if nothing has gone on, if the record

2  is quiet, then I at least want the parties to make what's

3  called a status report filing.

4      And, Ms. McLean, that is not something that you send --

5  don't send that to my chambers, you have to send that to the

6  clerk's office here at the courthouse, the second floor, so

7  that it is actually filed in the record.

8      And the status report just simply would give -- it's not

9  lengthy, it just simply would give the Court an update.  Yes,

10  I'm still in the process of my treatments and I'm still working

11  on counsel, but I have not been able to -- I have not been able

12  to direct my focus to that a hundred percent in light of my

13  medical status.

14      And that just simply tells me that you're working on it

15  but you still need the case to remain stayed because of your

16  medical condition.

17      And so then -- and I'll get a status report from

18  Ms. Holden as well.  There may not be any change for the

19  defendant, but I like to have both sides file a status report.

20  So that would be 60 days in.

21      And then I would have another status report -- if nothing

22  further has happened, then we'll have another status report

23  four months into it where it's just updating me on where things

24  stand.  Maybe you have finished your treatments early.  Or

25  maybe you have at that point actually hired someone but they're

1   not quite ready to file an entry of appearance for some reason.

2   Or maybe you haven't been able to do anything because the side

3   effects have really -- have really taken you down.

4       So whatever that may be, and it can be described

5   generally.  I do not want you -- I do not want either side to

6   discuss, of course, specifics of a medical status in a status

7   report.  But I'll have you file those status reports and then

8   it will keep the Court posted on how things are going.

9       At the end of that five-month period then, we will make a

10  determination of -- I'll decide then what needs to happen next.

11  If no new attorney has entered the picture and your treatments

12  are finished, then we'll need to have another phone conference

13  like this in order for me to speak with both sides about where

14  we go next then with the case and if you've made a final

15  decision then.

16      So that's what I'm inclined to do.

17      Now, before I officially order that or formally order that

18  and put that in the minutes, I want to hear from both sides, if

19  that's workable for you or if there is anything I've

20  overlooked.

21      Ms. McLean, do you have -- well, do you see that as

22  something workable for you and do you have any questions about

23  that?

24      MS. McLEAN:  Your Honor, I deeply, sincerely appreciate

25  the Court's consideration.  I do not have any problems with

1  that.

2      I have one question.  Was the attorney with whom I spoke,

3  who is in Chicago, correct when she said that she needed a

4  local counsel here as well as herself?

5      THE COURT:  Well, so I really can't answer that because it

6  would be giving legal advice.  Other than what I will tell you

7  is we have what are called local rules of court, and that is

8  what they would be filing.  Pursuant to our local rules, they

9  would be filing a pro hac vice motion based upon those local

10  rules.

11      And so when you speak with that attorney, I would just

12  encourage you to direct that attorney to take a look at our

13  local court rules and that should answer for them to what

14  extent they are required to have local counsel and to what

15  extent their preference is to have local counsel, even if the

16  Court does not formally require it.  Okay?

17      MS. McLEAN:  Thank you.  And I apologize for asking an

18  inappropriate question.

19      THE COURT:  No, no.  It's fine.  It's fine.  I answered it

20  as best I could.  And I think that will give you enough

21  information to speak with that attorney, okay?

22      MS. McLEAN:  Okay.

23      THE COURT:  All right.  And so do you understand what I

24  mean, Ms. McLean, when I talk about 60 days into it then?  I'll

25  have each side file a status report, nothing fancy, nothing

1    detailed, just generally updating me on where things stand with

2    your physical status and whether the case needs to remain

3    stayed.

4        Do you understand that?

5        MS. McLEAN:  Absolutely, I do.  I don't have any problem

6    with that, and I appreciate your good wishes for my treatment.

7        THE COURT:  Okay.

8        And then Ms. Holden, same questions to you.  Do you have

9    any questions about that process or can you think of anything

10   that I have overlooked that we should include within that?

11       MS. HOLDEN:  No, Your Honor.  I don't have any questions

12   or can think of anything that you've overlooked at all.

13       THE COURT:  Okay.  Okay.  Well, I am going to go ahead

14   then and I will put in the minutes that the Court is ordering a

15   stay of the case.  And I'll call it, like I said, up to a

16   five-month stay, and that will begin from today's conference.

17       And then I'll specify in the minutes and I'm ordering that

18   the parties, if nothing else transpires, that two months out

19   from today, and then four months out from today, that the

20   parties file a status report with the clerk of court updating

21   on whether the stay needs to continue.

22       And then if something is filed in the interim, if an

23   attorney enters an appearance or whatever might be filed in the

24   interim, then I'll proceed accordingly.  But otherwise, the

25   case is stayed at this time then.

1          Now, the one other matter that I do want to just touch

2     upon briefly, and you started discussing it as well,

3     Ms. Holden, is with respect to the medical records situation.

4     So originally that was the intent of the informal call today

5     that I would have conducted in my chambers.

6          There are a couple of things with respect to that.  So I

7     know both defense counsel and Ms. McLean have sent materials to

8     my chambers.  First, I just want to be clear that those letters

9     that were sent to my chambers -- Ms. Holden already knows this,

10    Ms. McLean, but those are not filed in the court record.  Those

11    are considered outside of the record, but I do require that the

12    opposing side be copied on those letters, on that email

13    transmission with the letters.

14         And so that is why I think my law clerk indicated that the

15    email you had sent yesterday evening, this morning I directed

16    my law clerk to confirm the receipt of that, but then also to

17    cc Ms. Holden and Mr. Birkenhauer on that.  Because the Court

18    is not permitted -- unless I am conducting what's called a

19    settlement conference with parties, the Court is not permitted

20    to have one-on-one communications either received from a party

21    or their lawyer in a case, or directed to a party or a lawyer

22    in the case.

23         Both sides always have to be involved.  It's what we call

24    ex parte communications.  And that's just simply -- well, it's

25    required by ethics rules and it just makes good sense.  Because

1   neither side in a case would ever want to feel like a judge on

2   the case is having communications with only one party or

3   receiving communications from only one side in a case without

4   them being involved in the communications as well.

5        And so that's why I forwarded your email.  And as a pro se

6   litigant, you would not have known that.  Ms. Holden

7   understands and Mr. Imm understood, the attorneys who practice

8   here, they are familiar with it.

9        But as I say, generally speaking, unless it is about what

10  are called settlement conferences or alternative dispute

11  resolution conferences in a case, that's really about the only

12  time that I would ever speak with one side without the other

13  side being present.  And that would pretty much be it.

14       So I have received those in my chambers, those will not be

15  filed in the court record.  And at this point I really don't

16  intend to take up that issue, and that is because until -- in

17  my opinion, until we see what Ms. McLean's circumstance is

18  going to be, as far as if she's going to have a new lawyer on

19  her behalf or will be moving forward -- after the stay is

20  lifted, moving forward representing herself, I don't think we

21  can take up the medical records issue until that time.  And

22  then we'll see how things unfold.

23       And I certainly have made note of the defendant's concern.

24  I just want to make sure, however that issue is worked through,

25  that if it is determined that they have a right to compile

1    those records or have access to those records, that they have

2    sufficient time to do so.

3        So that will be taken up at a later time once I know more

4    about the case and representation circumstances of Ms. McLean.

5        MS. HOLDEN:  Your Honor?

6        THE COURT:  Yes.

7        MS. HOLDEN:  If I may?  There's only one issue with that.

8        I did receive the email from Mr. Billman that forwarded

9    the email from Dr. McLean, but apparently she attached a

10    letter, because it's referenced in her email dated 4/19/21.  We

11    did not receive a copy of that letter.  So if there was a

12    letter that she attached, it didn't come through when he

13    forwarded that email to me and Mr. Birkenhauer.

14        THE COURT:  Okay, okay.  Yes, that is something with our

15    email.  I appreciate you mentioning that, because there was a

16    letter attached.  And so I will have Mr. Billman forward that

17    letter to you as well.  And of course Ms. McLean will be cc'd

18    on that email transmittal also so that you have the

19    communication that came through.

20        Okay.  And then we'll hold off on the medical records

21    issue until we see what happens over the course of the next

22    five months then.

23        Now, just for purposes of the record, then, so it is

24    clear, docket entry number 45, rather than having that linger

25    out there as a pending proposed agreed order for the Court's

1   consideration, I am going to go ahead and deny that but without

2   prejudice.  So I'm not denying it based upon my merits review

3   of what was proposed by the lawyers, I'm just denying it

4   because of the current procedural circumstances of the case.

5       And then at the right time, hopefully at the end of the

6   five-month period if not sooner, then I'll take up with the

7   parties once again that proposed schedule and any further

8   refinements that need to be made to even that proposal based

9   upon the circumstances of the case at that time.

10      Okay.  I think I have covered everything that I need to

11  for today's purposes, at least in my mind anyway.  So I do want

12  to make sure though that neither side has any final matters

13  they need to bring to my attention.

14      Ms. McLean, do you have any further questions or points

15  that you need to bring to the Court's attention for today?

16      MS. McLEAN:  No, ma'am.  Except just thank you very much

17  for your support.

18      THE COURT:  Okay.  No problem.

19      Actually, I do have a follow-up question for you.

20      We may already have this in the record, I'm not quite

21  sure.  But pro se litigants, they are not permitted to be on

22  the email service roster is what we call it, with the clerk's

23  office.  The attorneys have formal email addresses for their

24  law offices.  But for pro se individuals, we do have to mail

25  them documents that -- the Court orders and so forth that the

```
 1    Court issues.
 2         And so do you have -- do you have your address of record
 3    on anything that has been filed in this case?  Or hang on just
 4    a moment, let me ask Madam Clerk.
 5         Madam Clerk, do we have an address for Ms. McLean on the
 6    dockets?
 7         THE CLERK:  It should have been on there.
 8         THE COURT:  Okay.
 9         MS. McLEAN:  Your Honor?
10         THE COURT:  Yes, ma'am.
11         MS. McLEAN:  All of the transcript and audiotape requests
12    that I have made have been mailed.  You have my address on
13    record.
14         And I didn't know that I wasn't permitted to have the
15    email addresses -- email address from Mr. Billman.  But I also
16    am not able to file on PACER, on the electronic --
17         THE COURT:  That's right, that's right.  And that is
18    because of the pro se status, Ms. McLean.  And so that's
19    certainly fine.  I appreciate you clarifying that.  It looks
20    like -- I'm checking our docket right now, and we are showing
21    an address in Villa Hills for you.  Is that -- is that correct?
22         MS. McLEAN:  Yes, it is.
23         THE COURT:  Okay.  So that is the mailing address that --
24    the official mailing address that our clerk's office will be
25    using.  I had forgotten about those transcript request forms.
```

1   So we will continue -- the clerk's office, which is officially

2   in charge of the formal court record in this case, all

3   documents that are filed, the docket sheet and so forth, they

4   will be using that address to mail you a copy of the minutes

5   from our call today.

6       Those minutes will probably be filed in the record

7   tomorrow and then mailed to you and emailed to Ms. Holden

8   tomorrow.

9       And then when you send in your status report, the status

10  report two months from now, that would be sent to our clerk's

11  office on the second floor of the courthouse here.  And it can

12  just be snail mailed, you do not have to -- and, in fact,

13  you're not able to file it through PACER.  So you would just

14  mail it to our clerk's office and then the ladies in the

15  clerk's office will then take care of making sure that it is

16  scanned and filed in the court record.

17      You also have the option, it is up to you, but pro se

18  litigants can of course -- we're a public courthouse, and you

19  can come into the courthouse physically and bring your filing

20  to the second floor of the courthouse if you would like do

21  that.  That's where the clerk's office is.  But you're also

22  free to just mail that in the mail.

23      You do have to make sure that you send a copy of your

24  status report to Ms. Holden and Mr. Birkenhauer at their

25  office.

1          MS. McLEAN:  May I do that through email?

2          THE COURT:  That would be up to Ms. Holden and

3    Mr. Birkenhauer.

4          MS. HOLDEN:  Yeah, I have no objection to sending it

5    through email.  And I can certainly email any documents we have

6    to Dr. McLean as well.

7          THE COURT:  Okay.  Okay.  And that's certainly fine.

8    Whatever the parties and the attorneys agree upon between

9    themselves, you know, that's certainly fine.

10         For court filing purposes, we will have to -- documents

11   that come from the court we'll mail to you, Ms. McLean.  And

12   then you have the choice of either mailing or bringing them in

13   person here to the courthouse for filing purposes.  Okay?

14         MS. McLEAN:  Yes.  Thank you.

15         THE COURT:  Sure, sure.  No problem.

16         Okay.  So I think that should take care of it then.  We'll

17   go ahead and get that minute entry entered likely tomorrow.

18   And then unless I see something filed earlier, I'll just be on

19   the lookout for those status reports then two months from now.

20   So very well.

21         Well, thank you all for your time today, I do appreciate

22   it.  At this time then we will go ahead and conclude our call.

23   Enjoy the rest of your day.  Thank you.

24         MS. HOLDEN:  Thank you.

25         (Proceeding concluded at 3:41 p.m.)

1                       C E R T I F I C A T E

2

3           I, Linda S. Mullen, RDR, CRR, do hereby certify that

4    the foregoing is a true, correct and complete transcript of the

5    audio-recorded proceedings in this matter, recorded on

6    Wednesday, April 20, 2021, at 2:30 p.m., and transcribed from

7    the audio recording to the best of my ability, and that said

8    transcript has been compared with the audio record.

9

10          Given under my hand this 17th day of June, 2021.

11                        /s/ Linda S. Mullen
                          Linda S. Mullen, RDR, CRR
12                        Official Reporter, United States
                          District Court for the Eastern
13                        District of Kentucky

14

15

16

17

18

19

20

21

22

23

24

25